George F. Carpinello, Esq.
Adam R. Shaw, Esq.
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street
Albany, NY 12207
(518) 434-0600

Charles Juntikka, Esq.
CHARLES JUNTIKKA & ASSOCIATES LLP
1250 Broadway, 24th Floor
New York, NY 10001
(212) 315-3755

*Attorneys for Plaintiff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Nyree Belton,<br><br>             Debtor, | |
| Nyree Belton,<br><br>             Debtor and Plaintiff on Behalf of Herself and All Others Similarly Situated,<br><br>    v.<br><br>GE Capital Consumer Lending, Inc. a/k/a GE Money Bank,<br><br>             Defendant. | Chapter 7<br>Case No. 12-23037 (RDD)<br><br>Adv. Proc. No. 14-08223 (RDD) |

**DECLARATION OF TERRY W. CLEMANS**

I, **Terry W. Clemans**, declare that:

1. I am the Executive Director of the National Credit Reporting Association, Inc. ("NCRA"). Founded in 1992, the NCRA is a national trade organization of consumer reporting agencies and associated professionals that provide credit reporting products and services to hundreds of thousands of credit grantors, employers, landlords and all types of general businesses. I make this declaration based on my personal knowledge.

2. I have been professionally involved in the credit reporting industry since 1986. From 1991 until 1998, I owned and operated a credit reporting agency when I sold it to a large publicly traded competitor (Factual Data Corp.) for whom I continued my career. Since 2001 I have been the Executive Director of NCRA. I therefore have extensive knowledge of credit reporting issues in general and of the issues of the proper reporting of debts discharged in bankruptcy, in particular.

3. NCRA's members are in the business of providing credit information to mortgage originators, property managers and employers. Our member companies merge, reformat and de-duplicate information from all three (3) national credit reporting agencies into a single report and also undertake additional investigations into the potential borrower's credit transactions as requested by the mortgage originators.

4. The standards for lending credit for mortgage loans has been significantly tightened since the recession, and the major mortgage lenders (especially Fannie Mae and Freddie Mac) have extremely tight lending criteria. Any serious delinquency on a credit report may well lead to the denial of a mortgage loan.

5. I understand that GE Capital Consumer Lending, Inc.'s (hereinafter "GE Capital") claims that a notation of a debt as "charge off," with a "zero balance," and "sold," or "transferred," has no adverse effect on a consumer's credit report. I can state unequivocally that

1

that is untrue. Charged off accounts are one of the most serious adverse accounts to have on a credit report and very frequently the source of the denial of a mortgage loan. The worst possible situation is when an account is marked as adverse outside of the bankruptcy. This situation will result in denial of a mortgage loan application almost 100% of the time.

6. Often, mortgage lenders do not evaluate the quality or characteristics of a "charge off" notation on a credit report when considering whether to provide a mortgage in applications with borderline credit histories. On these cases, a "charge off" notation will cause a lender to deny a loan. That is because "charge off" notations can signify that a debt has not been paid and is still outstanding. This can even be true if the "charge off" notation is accompanied by a "zero balance" and "sold" or "transferred" notation. Having a charged off account even with a zero balance along with a bankruptcy is worse than having an account included in bankruptcy.

7. Absent a specific request to do so, our member companies cannot examine charge off accounts as the mortgage lending requirements demand credit reports be completed in less than one minute and this makes it impossible to determine if the potential borrower had an account listed as a charge off even if it was discharged in bankruptcy. Our member companies rely upon the information reported by the creditors to the three national credit reporting agencies to provide up-to-date accurate information about those facts.

8. If a consumer is aware of a denial of a mortgage loan and is further aware that the charged off debt was, in fact, discharged in bankruptcy, and if the mortgage originator is willing to have one of our member companies take the time and effort to verify that fact, it is possible that the mortgage originator will extend the loan if our member company is able to verify that the particular underlying debt was discharged in bankruptcy. Other mortgage originators, however, will simply deny the application based on the outcome of the automated underwriting systems used in the mortgage industry.

2

9. Similar outcomes can occur with regard to employers. More typically, however, a potential employer will not expend the effort to determine whether a charge off account was actually discharged in bankruptcy. The employment decision, obviously, is much more of a subjective decision, but it is undeniable that loan delinquencies on a credit report are not favored by potential employers and may result in a denial of employment. A charge off is considered by employers to be clearly derogatory information.

10. While there is not as strict a timeline for making a decision in the employment transaction, our members are still at the mercy of the employer or consumer to notify us if there is anything inaccurate on the report. Again, absent a specific request to do so, our member companies cannot look behind a charge off to see if the debt was actually discharged in bankruptcy.

I hereby declare under penalties of perjury that the foregoing is true and correct.

Dated: Roselle, IL
November 21, 2014

_____
Terry W. Clemans