UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re:                                                        :
                                                              :
NYREE BELTON,                                                 :     **MEMORANDUM DECISION**
            Debtor.                                           :
--------------------------------------------------------------x     15 CV 1934 (VB)
NYREE BELTON, Debtor and Plaintiff on                         :
behalf of herself and all others similarly                    :
situated,                                                     :
            Plaintiff,                                        :
                                                              :
                                                              :
v.                                                            :
                                                              :
                                                              :
GE CAPITAL CONSUMER LENDING, INC.                             :
a/k/a GE MONEY BANK,                                          :
            Defendant.                                        :
--------------------------------------------------------------x
In re:                                                        :
                                                              :
KIMBERLY BRUCE,                                               :
            Debtor.                                           :
--------------------------------------------------------------x     15 CV 3311 (VB)
KIMBERLY BRUCE, Debtor and Plaintiff on                       :
behalf of herself and all others similarly                    :
situated,                                                     :
            Plaintiff,                                        :
                                                              :
                                                              :
v.                                                            :
                                                              :
                                                              :
CITIGROUP INC., CITIBANK, N.A., and                           :
CITIBANK (SOUTH DAKOTA), N.A.,                                :
            Defendants.                                       :
--------------------------------------------------------------x

Briccetti, J.:

In these related bankruptcy appeals, defendants-appellants GE Capital Retail Bank[1]

("GE"), as well as Citigroup Inc. and Citibank, N.A., successor-in-interest to Citibank (South

---

[1] GE Capital Retail Bank was formerly known as GE Money Bank, which is named in the Belton case caption as an "also known as" for GE Capital Consumer Lending, Inc.

1

Dakota), N.A. (together, "Citi"), appeal from orders of the United States Bankruptcy Court for the Southern District of New York (Drain, J.) denying their respective motions to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.

For the following reasons, the Bankruptcy Court's orders are REVERSED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 158(a).

## BACKGROUND

In 2007, plaintiffs-appellees Nyree Belton and Kimberly Bruce each opened credit card accounts; Belton opened an account with GE, and Bruce opened an account with Citi. Both Belton's credit card agreement with GE and Bruce's credit card agreement with Citi contain arbitration provisions. The arbitration provision in Belton's agreement provides, in relevant part: "[A]ny past, present or future legal dispute or claim of any kind, including statutory and common law claims and claims for equitable relief, that relates in any way to your account, card or your relationship with us ('Claim') will be resolved by binding arbitration if either you or we elect to arbitrate." (Belton A112).[2] Bruce's agreement similarly states: "All Claims [defined as 'any claim, dispute, or controversy between you and us'] relating to your account, a prior related account, or our relationship are subject to arbitration." (Bruce A444). Both credit card agreements also have provisions discussing credit reporting, including the process for cardholders to follow if they believe defendants-appellants have provided "inaccurate" or "erroneous" information to credit reporting agencies. (Belton A112; Bruce A442).

In May 2012, Belton filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Bruce did the same in January 2013. Both petitions were filed in the United States Bankruptcy Court for the Southern District of New York.

---

[2]    "Belton A___" and "Bruce A___" refer to the appendices submitted in these appeals.

2

The Bankruptcy Court eventually entered a discharge order in each case, thereby closing the cases and discharging plaintiffs-appellees' debts. Among their discharged debts were debts they incurred with their GE and Citi credit cards, respectively.

In October 2012, after receiving her discharge, Belton obtained her credit report from Equifax, a credit reporting agency. The credit report included an entry, or "tradeline," for her GE credit card account. That account was listed as "charged off," which, according to plaintiffs-appellees, means a "debt [i]s currently due and owing." (Pls.' Br. at 4). The credit report gave no indication Belton's credit card debt had been discharged in bankruptcy.

Similarly, when Bruce obtained her credit report in September 2013, the report described her Citi credit card debt as "charged-off" rather than as having been discharged in bankruptcy.

In 2014, plaintiffs-appellees moved to re-open their bankruptcy cases. After the motions were granted, they each commenced a putative class action adversary proceeding. Plaintiffs-appellees allege defendants-appellants, as a matter of policy and practice, deliberately fail to inform credit reporting agencies about the discharge of debts in bankruptcy because former debtors will often pay discharged debts to have them removed from their credit reports. Defendants-appellants allegedly profit from debtors paying off discharged debts by (i) selling those debts, as well as information related thereto, to buyers who are willing to pay more for them because of the likelihood the debts will be paid off; and (ii) receiving a percentage—in some cases 100 percent—of each repaid debt. Plaintiffs-appellees allege defendants-appellants' practices violate the Bankruptcy Code's discharge injunction, which provides that a discharge order "operates as an injunction against . . . an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Plaintiffs-appellees seek, among other relief, to have defendants-appellants held in contempt for willfully violating discharge orders.

3

On June 30 and July 3, 2014, Citi and GE, respectively, moved to compel arbitration of the claims against them and to stay the adversary proceedings pending arbitration.

While its motion was pending, GE had Belton's discharged credit card debt removed from her credit report. Citi likewise had Bruce's discharged debt removed from her credit report.

In October 2014, the United States Trustee filed an application in Belton's re-opened bankruptcy case for an order authorizing the Trustee to conduct an examination of GE pursuant to Rule 2004 of the Federal Rules of Bankruptcy.[3] Specifically, the Trustee sought to serve a subpoena duces tecum on GE and to compel a GE representative to answer oral questions. The Trustee filed a similar application in Bruce's bankruptcy case in December 2014. The Bankruptcy Court granted both applications in January 2015.

On November 10, 2014, the Bankruptcy Court issued an order denying GE's motion to compel arbitration. (Belton A684). The Bankruptcy Court set forth its reasons for doing so in a "Corrected and Modified Bench Ruling" issued the same day. See In re Belton, 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10, 2014). Two days later, on November 12, 2014, the Bankruptcy Court issued an order denying Citi's motion to compel arbitration substantially for the reasons stated in its Corrected and Modified Bench Ruling. (Bruce A620).

Defendants-appellants sought leave to appeal those orders directly to the United States Court of Appeals for the Second Circuit, which denied their applications on March 3 and April 7, 2015, respectively. Accordingly, GE filed the pending appeal in this Court on March 13, 2015, and Citi did so on April 28, 2015.

---

[3]    A Rule 2004 examination is a "very broad," "pre-litigation" discovery process designed "to assist the trustee in revealing the nature and extent of the estate, ascertaining assets, and discovering whether any wrongdoing has occurred." In re Corso, 328 B.R. 375, 383 (E.D.N.Y. 2005) (internal quotation marks omitted).

4

## DISCUSSION

I. Standard of Review

A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree." Fed. R. Bankr. P. 8013. A district court reviews a bankruptcy court's conclusions of law de novo and its findings of fact under a clearly erroneous standard. See In re Ames Dep't Stores, Inc., 582 F.3d 422, 426 (2d Cir. 2009) (citing Momentum Mfg. Corp. v. Emp. Creditors Comm., 25 F.3d 1132, 1136 (2d Cir. 1994)).

II. Arbitrability of Plaintiffs-Appellees' Claims

The FAA provides, in relevant part: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute reflects a "liberal federal policy favoring arbitration," AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks omitted), and establishes a "preference for enforcing arbitration agreements . . . even when the claims at issue are federal statutory claims." Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 486 (2d Cir. 2013).

In deciding whether to compel arbitration, "a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." In re Am. Express Fin. Advisors Secs. Litig., 672 F.3d 113, 128 (2d Cir. 2011). And when any of claims at issue arise under a federal statute, the court must also determine whether Congress intended such federal statutory claims to be arbitrated, and whether arbitration would "prevent the 'effective vindication' of [the] federal statutory right." Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2309-10 (2013).

5

Although the Bankruptcy Court ultimately denied defendants-appellants' motions to compel arbitration, it concluded the parties' arbitration agreements were valid and covered plaintiffs-appellees' claims. Plaintiffs-appellees challenge those rulings on appeal.

Accordingly, the Court first considers whether the arbitration agreements are valid.

A.    Validity of Arbitration Agreements

Plaintiffs-appellees contend their bankruptcy discharges rendered their arbitration agreements unenforceable.[4] According to plaintiffs-appellees, their discharges relieved them of all of their obligations under their credit card agreements—including their obligation to arbitrate.

However, in MBNA America Bank, N.A. v. Hill, the Second Circuit enforced an arbitration clause even though the plaintiff had already been granted a discharge. 436 F.3d 104, 106, 110-11 (2d Cir. 2006). Hill thus appears to foreclose plaintiffs-appellees' argument.

In any event, Supreme Court precedent makes clear that "a party's challenge to . . . [a] contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70 (2010) (emphasis added). "That is because § 2 [of the FAA] states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' without mention of the validity of the contract in which it is contained." Id. Indeed, "[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." Id. at 70-71. Thus, an arbitration agreement may be declared unenforceable only when a party "challenges specifically the validity of the agreement to arbitrate," as opposed to the validity of the entire contract. Id. at 70 (internal quotation marks omitted).

---

[4]    Although plaintiffs-appellees include this argument in a section of their brief discussing the scope of the arbitration agreements (Pls.' Br. at 38-41), this argument assails the validity, rather than the scope, of the arbitration agreements.

6

Here, plaintiff-appellees do not make any arguments about why their agreements to arbitrate, in and of themselves, are unenforceable; rather, they attack the enforceability of their credit card agreements as a whole. Plaintiffs-appellees therefore have failed to show their arbitration agreements are invalid under Jackson.

Accordingly, the Court next considers whether plaintiffs-appellees' claims fall within the scope of their arbitration agreements.

B.    Scope of Arbitration Agreements

Plaintiffs-appellees contend their claims exceed the scope of their respective arbitration agreements because those agreements apply only to claims or disputes between the parties, whereas the claims here are, in effect, between defendants-appellants and the Bankruptcy Court. As plaintiffs-appellees explain, these actions seek to hold defendants-appellants in contempt for violating the Bankruptcy Court's discharge orders, meaning, in plaintiffs-appellees' view, "the Bankruptcy Court itself is a party to each action, since it is the Bankruptcy Court's injunction that has allegedly been violated and it is the Bankruptcy Court's . . . powers that provide the means through which the violation can be remedied." (Pls.' Br. at 39).

But "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement," the Court focuses "on the factual allegations in the complaint rather than the legal causes of action asserted." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). "If the allegations underlying the claims 'touch matters' covered by the parties [credit card] agreements, then those claims must be arbitrated, whatever the legal labels attached to them." Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n.13 (1985)).

7

Plaintiffs-appellees allege defendants-appellants deliberately failed to remove discharged debts, or have discharged debts removed, from plaintiffs-appellees' credit reports. The parties' credit card agreements specifically discuss credit reporting, including the process for plaintiffs-appellees to follow if they believe defendants-appellants have provided "inaccurate" or "erroneous" information to credit reporting agencies. (Belton A112; Bruce A442). Thus, the factual allegations underlying plaintiffs-appellants' claims clearly "touch matters" covered by their credit card agreements.

Accordingly, irrespective of the relief plaintiffs-appellees seek or the means by which they hope to obtain such relief, their claims fall within the scope of their arbitration agreements.

Having concluded the arbitration agreements are valid and cover the claims asserted here, the Court next considers whether Congress intended claims under Section 524 to be arbitrable.

C.    Congressional Intent to Preclude Arbitration of Section 524 Claims

As noted above, the FAA establishes a "preference for enforcing arbitration agreements." Parisi v. Goldman, Sachs & Co., 710 F.3d at 486. The statute thus generally "requires courts to enforce agreements to arbitrate according to their terms . . . even when the claims at issue are federal statutory claims." CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 669 (2012). But "the FAA's mandate [may be] overridden" if the federal statute alleged to have been violated contains "a contrary congressional command," id. (internal quotation marks omitted), that is, if the statute evinces Congress' intent to have courts, not arbitrators, decide claims arising under the statute. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). "The party opposing arbitration has the burden of showing that Congress intended to preclude arbitration of the statutory rights at issue." MBNA Am. Bank, N.A. v. Hill, 436 F.3d at 108.

8

The parties disagree about how to ascertain whether Congress intended to foreclose arbitration of discharge injunction claims under Section 524.  Plaintiffs-appellees contend this intent may be divined "from [the Bankruptcy Code's] text or legislative history, or from an inherent conflict between arbitration and the [Code]'s underlying purposes," as set forth in Shearson/American Express, Inc. v. McMahon, 482 U.S. at 227 (internal citation and quotation marks omitted).  (Pls.' Br. at 15, 22).  Defendants-appellants maintain the Supreme Court's recent decision in CompuCredit Corp. v. Greenwood, which considered whether the Credit Repair Organizations Act ("CROA") prohibits arbitration of claims made thereunder, requires plaintiffs-appellees to identify "explicit statutory language" exempting their claims from arbitration; a statute's legislative history or an "inherent conflict" is not enough.  (GE Br. at 18; accord Citi Br. at 10 (federal statutory claims must be arbitrated "in the absence of an express contradiction in the text of the statute")).

The Court agrees with plaintiffs-appellees.  Although CompuCredit held CROA claims are subject to arbitration "[b]ecause the CROA is silent on whether claims under the Act can proceed in an arbitrable forum," 132 S. Ct. at 673, CompuCredit cannot be read as impliedly overruling McMahon, particularly given that CompuCredit cites McMahon for the proposition that the FAA may be "overridden by a contrary congressional command." CompuCredit Corp. v. Greenwood, 132 S. Ct. at 669 (internal quotation marks omitted).  Indeed, Justices Sotomayor and Kagan, who concurred in the judgment in CompuCredit, did "not understand the majority opinion to hold that Congress must speak so explicitly in order to convey its intent to preclude arbitration of statutory claims.  We have never said as much, and on numerous occasions have held that proof of Congress' intent may also be discovered in the history or purpose of the statute in question." Id. at 675 (Sotomayor and Kagan, J.J., concurring).  And, as plaintiffs-appellees

9

point out, in arguing that the CROA overrode the FAA, respondents in CompuCredit did not rely on the CROA's legislative history, nor did they make an "inherent conflict" argument; "[c]onsequently, the sole question for the Court [wa]s whether the text of the CROA precludes arbitration with sufficient clarity to override the operation of the FAA." (Pls.' Br. at 24 (quoting petitioners' brief in CompuCredit, 2011 WL 2533009, at *18 (June 23, 2011))).

Accordingly, in deciding whether Congress intended to preclude arbitration of Section 524 claims, the Court may look to the Bankruptcy Code's text, its legislative history, "or [to] an inherent conflict between arbitration and the [Code]'s underlying purposes." Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. at 227 (emphasis added). That said, "[t]hroughout such an inquiry, it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. at 26 (internal quotation mark omitted).

1. Text and Legislative History

Neither Section 524, nor the Bankruptcy Code in general, expressly mentions arbitration.

28 U.S.C. § 1334 does, however, discuss jurisdiction over bankruptcy-related matters. The statute provides, in relevant part, that federal district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," 28 U.S.C. § 1334(b) (emphasis added), but retain exclusive jurisdiction over "claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327."[5] Id. § 1334(e)(2).

---

[5] Section 327 of the Bankruptcy Code addresses the retention and compensation of professionals, such as attorneys, accountants, appraisers, and auctioneers, in connection with a bankruptcy proceeding.

By declining to give district courts exclusive jurisdiction over most bankruptcy-related civil proceedings, Section 1334(b) on its face appears to permit arbitration of such proceedings. See MBNA Am. Bank, N.A. v. Hill, 436 F.3d at 110 (citing Section 1334 and noting that "[a]rbitration is presumptively an appropriate and competent forum for federal statutory claims" and that litigation of claims under the Bankruptcy Code's automatic stay provision "is not a matter within the exclusive jurisdiction of the bankruptcy courts").

And to the extent it can be argued that a grant of exclusive jurisdiction over certain claims provides some evidence of Congress' intent to preclude arbitration of those claims,[6] the fact that in subsection (e)(2) of Section 1334 Congress vested district courts with exclusive jurisdiction over Section 327 claims—but not Section 524 claims—cuts against the conclusion that Congress intended to exempt Section 524 claims from arbitration. See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1157 n.11 (3d Cir. 1989) ("Where Congress has specifically indicated subjugation of arbitration to the dictates of the bankruptcy laws in one situation, but not in another, we must presume that Congress neither intended to subjugate arbitration in the second instance, nor saw the two laws as conflicting in this respect."). Congress added subsection (e)(2) in 2005, after "a string of [Supreme] Court[] decisions compelling arbitration pursuant to contractual stipulations . . . [had] alerted Congress to the utility of drafting anti[-arbitration] prescriptions with meticulous care." CompuCredit Corp. v. Greenwood, 132 S. Ct. at 669 (Ginsburg, J., dissenting). Thus, had Congress intended to give

---

[6] In McMahon, the Supreme Court held that claims under Section 10(b) of the Securities Exchange Act are subject to arbitration even though the statute grants district courts exclusive jurisdiction over such claims. 482 U.S. at 227-28. The dissent pointed out, however, that "the limitation of § 10(b) actions to federal court argues against enforcing predispute arbitration agreements as to such actions." Id. at 245 n.2 (Blackmun, J., dissenting).

11

federal courts exclusive jurisdiction over Section 524 claims, or otherwise express its intent to preclude arbitration of those claims, it knew how to do so.

Accordingly, text and legislative history weigh against the conclusion that Congress intended to preclude arbitration of Section 524 claims.

### 2. Inherent Conflict

An "inherent conflict" exists between the FAA and a provision of the Bankruptcy Code if arbitrating a claim arising under that provision would "necessarily" and "seriously" jeopardize the Code's objectives, which include "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." MBNA Am. Bank, N.A. v. Hill, 436 F.3d at 108-09 (internal quotation marks omitted). Determining whether arbitration of a claim would necessarily and seriously jeopardize the Code's objectives "requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy." Id. at 108. Only if a "severe conflict" is found can a court "properly conclude that, with respect to the particular Code provision involved, Congress intended to override the Arbitration Act's general policy favoring the enforcement of arbitration agreements." Id.

Here, arbitrating plaintiffs-appellees' Section 524 claims would neither necessarily nor seriously jeopardize the objectives of that section or of the Bankruptcy Code in general.

The Bankruptcy Court concluded plaintiffs-appellees' Section 524 claims should not be arbitrated principally because giving the debtor a "fresh start" is the most fundamental objective of the Bankruptcy Code; the discharge injunction secures that objective; and, therefore, allowing an arbitrator rather than a bankruptcy court to adjudicate a claim for violation of the discharge injunction would seriously undermine that objective. See In re Belton, 2014 WL 5819586, at *8.

But the fact that a plaintiff alleges a violation of an important, even fundamental, Bankruptcy Code provision is not enough to exempt such a claim from arbitration.  In MBNA America Bank, N.A. v. Hill, the Second Circuit compelled arbitration of a putative class action adversary proceeding alleging violations of the Bankruptcy Code's automatic stay provision, even though the court recognized "the automatic stay is surely an important provision of the Bankruptcy Code."  436 F.3d at 110; accord Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986) ("The automatic stay provision . . . has been described as one of the fundamental debtor protections provided by the bankruptcy laws." (internal quotation marks omitted)).  Indeed, "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. at 26 (internal quotation marks omitted).

The Bankruptcy Court misread Hill as "articulat[ing] in very strong dicta that when the debtor's fresh start is at issue, an enforcement proceeding in the bankruptcy court should not be stayed in favor of arbitration."  In re Belton, 2014 WL 5819586, at *8.  In Hill, the Second Circuit held that arbitration of the plaintiff's automatic stay claim would not seriously jeopardize the objectives of the Bankruptcy Code, "[f]irst, and most importantly," because the plaintiff had received a discharge and, therefore, "no longer require[d] the protection of the stay to ensure her fresh start."  436 F.3d at 110.  The Bankruptcy Court interpreted Hill as suggesting that, had the stay been necessary to ensure the plaintiff's fresh start, arbitration would not have been appropriate; and because the discharge injunction is necessary to obtain a fresh start, the reasoning goes, Hill should be viewed as cautioning against arbitration of actions to enforce that injunction.

13

But Hill cannot be construed as supporting the notion that arbitration is unavailable whenever "the debtor's fresh start is at issue." In re Belton, 2014 WL 5819586, at *8. Hill stands for the more modest proposition that claims alleging violations of the Bankruptcy Code should not be arbitrated if those claims are "integral to [the] bankruptcy court's ability to preserve and equitably distribute assets of the estate" or if arbitration would "substantially interfere with [the debtor's] efforts to reorganize." 436 F.3d at 110 (internal quotation marks omitted). Conversely, under Hill, arbitration of claims under the Bankruptcy Code is required when "arbitration would not interfere with or affect the distribution of the estate" or would not "affect an ongoing reorganization," as was the case there. Id. at 109-10.

In support of the latter proposition, Hill cited Bigelow v. Green Tree Financial Servicing Corp., 2000 WL 33596476 (E.D. Cal. Nov. 30, 2000), a case in which the court compelled arbitration of the plaintiff's claims—including a claim for violation of the discharge injunction under Section 524—because the claims did "not address the liquidation of the estate nor the priority of creditor's claims." Id. at *6. The court therefore "perceive[d] no adverse effect on the underlying purposes of the code from enforcing arbitration." Id. The same reasoning applies here. Because arbitration of plaintiffs-appellees' Section 524 claims "would not interfere with or affect the distribution of the estate" and would not "affect an ongoing reorganization," it cannot be said arbitration would necessarily or seriously jeopardize the objectives of the Bankruptcy Code in this case. MBNA Am. Bank, N.A. v. Hill, 436 F.3d at 109-10.

Hill's two other bases for holding that arbitration of the plaintiff's automatic stay claim would not seriously jeopardize the objectives of the Bankruptcy Code apply equally here as well.

The Second Circuit observed that "the fact Hill filed her [automatic stay] claim as a putative class action" weighed in favor of compelling arbitration. MBNA Am. Bank, N.A.

14

v. Hill, 436 F.3d at 110. "By tying her claim to a class of allegedly similarly situated individuals, many of whom are no longer in bankruptcy proceedings," the court explained, Hill "demonstrate[d] the lack of a close connection between the claim and her own underlying bankruptcy case." Id. In other words, bringing her claim as part of a putative class action underscored the fact that the claim was not "integral" to her own bankruptcy case. Id.; cf. In re U.S. Lines, Inc., 197 F.3d 631, 641 (2d Cir. 1999) (reversing order compelling arbitration of declaratory judgment proceedings because they were "integral to the bankruptcy court's ability to preserve and equitably distribute the Trust's assets"). The same goes here for plaintiffs-appellees.

The Second Circuit in Hill also relied on the fact that the bankruptcy court was not "uniquely able to interpret and enforce" the automatic stay provision. 436 F.3d at 110. The court noted that "[a]rbitration is presumptively an appropriate and competent forum for federal statutory claims," id., and there was nothing to suggest the bankruptcy court was more qualified than an arbitrator to adjudicate a claim alleging violations of the automatic stay.

Similarly here, a discharge order "is a form, a national form, which is issued in every case when there is, in fact, a discharge"; it is "not a handcrafted order." In re Haynes, 2014 WL 3608891, at *8 (Bankr. S.D.N.Y. July 22, 2014). Accordingly, the Bankruptcy Court is not "uniquely able to interpret and enforce" such an order. MBNA Am. Bank v. Hill, 436 F.3d at 110. This point is only reinforced by the fact that plaintiffs-appellees have brought putative class actions asking one bankruptcy court to enforce the discharge orders of many other bankruptcy courts. Arbitration of plaintiffs-appellees' Section 524 claims therefore would not necessarily or seriously jeopardize the goal of having bankruptcy courts enforce their own orders. Id. at 108.

In short, Hill does not support denial of defendants-appellants' motions to compel.

Plaintiffs-appellees also contend that arbitrating their claims would necessarily and seriously jeopardize the Bankruptcy Code's goal of avoiding piecemeal litigation. See MBNA Am. Bank v. Hill, 436 F.3d at 108. As plaintiffs-appellees argue, the United States Trustee has "intervened in these cases" to conduct examinations pursuant to Federal Rule of Bankruptcy Procedure 2004, but the Trustee is obviously not a party to their arbitration agreements; thus, because "[t]he Trustee's actions cannot be arbitrated . . . the granting of Defendants-Appellants' motions would lead to duplicative proceedings." (Pls.' Br. at 37-38).

Although the Trustee has intervened in plaintiffs-appellees' bankruptcy cases, the Trustee has not joined in the adversary proceedings that defendants-appellants seek to arbitrate. Indeed, as the Bankruptcy Court noted, the Trustee is conducting a "separate inquiry" that is "not really tied to" the adversary proceedings. (Bruce A775). Sending the adversary proceedings to arbitration therefore will not create any more duplicative proceedings than already exist.

Accordingly, plaintiffs-appellees have failed to meet their burden of showing Congress intended to preclude arbitration of Section 524 claims.

The Court therefore will next consider whether arbitration would "prevent the 'effective vindication' of" plaintiffs-appellees' right to the fresh start secured by the discharge injunction. Am. Express Co. v. Italian Colors Rest., 133 S. Ct. at 2310.

D.   Effective Vindication Doctrine

The "effective vindication" doctrine "originated as dictum" in Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., a case in which the Supreme Court "expressed a willingness to invalidate, on public policy grounds, arbitration agreements that operate as a prospective waiver of a party's right to pursue statutory remedies." Am. Express Co. v. Italian Colors Rest., 133 S. Ct. at 2310 (alterations and internal quotation marks omitted). "[S]o long as the prospective

16

litigant effectively may vindicate its statutory cause of action in the arbitral forum," the Court observed, "the statute will continue to serve both its remedial and deterrent function." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 637.

As the Supreme Court made clear in Italian Colors, the doctrine will only invalidate an agreement that eliminates "the right to pursue" a federal remedy, such as an agreement "forbidding the assertion of certain statutory rights" or imposing "filing and administrative fees . . . that are so high as to make access to the [arbitral] forum impracticable." 133 S. Ct. at 2310-11. When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000).

Although the Bankruptcy Court concluded there was a "risk" the costs of arbitration here would "make access to the [arbitral] forum impracticable," In re Belton, 2014 WL 5819586, at *9, the record is devoid of facts "showing the likelihood" such costs would actually be incurred. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. at 92. The costs of arbitration here therefore cannot serve as a basis for invalidating the arbitration agreements.

The Bankruptcy Court also expressed concern about "the ability of an arbitration panel to grant timely . . . [and] effective relief." In re Belton, 2014 WL 5819586, at *10. The inability to grant timely relief, however, is not tantamount to "the elimination of the right to pursue" a federal statutory remedy. Am. Express Co. v. Italian Colors Rest., 133 S. Ct. at 2311 (emphasis in original). In any event, plaintiffs-appellees' discharged debts have been removed from their credit reports, thus mitigating the need for urgent action. Cf. In re Belton, 2014 WL 5819586, at *10 ("[E]very day that a credit report is inaccurate is another day that the debtor believes she must pay her debt or be turned down for new credit."). And although the Bankruptcy Court

17

doubted whether an arbitrator could render a final decision on any bankruptcy matters in light of the Supreme Court's decision in <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011) (holding that a bankruptcy court lacks constitutional authority to make final determinations on certain types of core bankruptcy matters),[7] in <u>Wellness International Network, Ltd. v. Sharif</u>, 135 S. Ct. 1932 (2015), the Supreme Court held that bankruptcy judges could adjudicate all matters submitted to them on the parties' consent. The Court even noted that arbitration is a long-accepted method of resolving cases on consent. <u>Id</u>. at 1942.

Accordingly, arbitration of plaintiffs-appellees' Section 524 claims would not prevent the effective vindication of their right to a fresh start.

## CONCLUSION

The Bankruptcy Court's orders denying defendants-appellants' motions to compel arbitration are REVERSED. These cases are REMANDED to the Bankruptcy Court with instructions to grant the respective motions to compel and stay the adversary proceedings pending arbitration, and for further proceedings consistent with this Memorandum Decision.

The Clerk is instructed to close these cases.

Dated: October 14, 2015
       White Plains, NY

SO ORDERED.

_____
Vincent L. Briccetti
United States District Judge

---

[7] As plaintiffs-appellees explain, "if the Bankruptcy Court does not even have the power to issue a final order on some bankruptcy matters, how could a non-Article III or a non-Article I arbitrator have more power to finally resolve bankruptcy matters." (Pls.' Br. at 32).